In this case it is not pretended that the right of the defendant is bound. The objections go to the remedy only.
It is objected, first, that the deed of bargain and sale from Michael Hill, the tenant in tail to John Hill, of 1746, created a discontinuance of the estate tail on account of the warranty attached to it, and that thereby the heir in tail is put to her formedon to recover her estate tail, and cannot regain possession thereof by entry or action of ejectment.
It is objected, secondly, that the defendant is barred by the statute of limitations.
A bargain and sale is a rightful conveyance; the statute transfers the seizin of the bargainor to the bargainee; such a seizin, such an estate as the bargainor had, is transferred to the bargainee. I (332) speak not as to parties, but as to strangers — that is, those not claiming under either of them. A foeffment is called a wrongful conveyance, because it passes, even as to the whole world, what it professes to pass. It is true, if the feoffor had not the rightful estate, the estate which he passed may be put an end to by him who has the rightful one; but it continues till it is put an end to. If tenant in tail, therefore, bargain and sell the entailed lands in fee, it is not a discontinuance of the estate tail, for that is a separation of the right from the estate; for the issue in tail claims not from the tenant in tail, but per formam doni; he is, therefore, a stranger to the bargainor, and, as to him, the bargain and sale passes only an estate for the life of the bargainor. His estateremains still in him; he is not put to an action to recover it, for he has not lost it. He may enter, which is the touchstone by which is *Page 146 
ascertained whether an estate is lost or not; for if the tenant is disseized, and has not, by a descent or otherwise, lost his right of entry, he may compel the lord to avow upon him and in all respects recognize him as his tenant, as one having an estate; nor can he, so long as his right of entry remains, at his election throw off his estate. The lord may avow upon him as his tenant, and compel him to perform his services. And his right of entry will support a contingent remainder dependent on his estate as the precedent freehold, and as the issue in tail after the death of the bargainor may enter (which is not disputed by any one), it proves beyond a doubt that the estate tail is in him, and not in the bargainee — that is, that the bargainee has no estate of any kind, for there cannot be two persons on the same estate at the same time, holding adversely; there may be titles innumerable, but more than one estate at the same time there cannot be; and if it is in the issue in tail, it is not in the bargainee. There is, then, no separation of the right from the estate; they both are united in the issue; there is no discontinuance. These (333) principles are not controverted by a single writer that I know of. But a feoffment made by a tenant in tail is a discontinuance; for a feoffment passes not only what the feoffor can rightfully pass, but what it professes to pass. The estate is, therefore, in the feoffee; and if in him it is not in the issue in tail, who has nothing but a right to the estate tail. There is a separation of the right from the estate, there is a discontinuance, and if a warranty is added to the feoffment, and it descends on him who is issue in tail, as heir of the warrantor, unaccompanied with fee-simple assets equal in value to the entailed lands, the issue in tail is barred by means of the warranty and assets combined — not upon principles of strict right, but of policy and convenience, for the sake of quiet and repose, to avoid circuity of action. The discontinuance does not affect the right, but affords to the party an opportunity of showing that which does. That the warranty and assets form no bar to divest is clearly proven by this: If the issue in tail should enter, an action cannot be sustained against him on the warranty and assets; and even where there is a discontinuance, and the entry of the issue unlawful, yet if the feoffee brings a writ of right, in which action the true right is tried, the issue will prevail; which proves that it is the avoidance of circuity of action which forms the bar. This accounts for such expressions as those to be found in all books, that it works a discontinuance; that it amounts to be found in all books, that it works a discontinuance; that it amounts to a discontinuance, if it only barred it; it is not one of itself; if it is not one of itself, it is made so by construction for particular purposes, when those purposes are answered, or when they were never active; the thing is as it is; it is itself.
I will next endeavor to show that it derives no aid from the warranty in discontinuing the estate; a warranty is a covenant annexed to an *Page 147 estate. Without an estate there cannot be a warranty. When no estate passes by a deed, and the grantee had no estate before, the warranty is a nullity. If an estate is made to a man for life, with a warranty to him and his heirs forever, the warranty determines with the (334) life estate. A warranty is that which protects the estate; it entwines itself around it, and must fall to the ground with it. It is true that it is not necessary that a warranty should be annexed to a deed which passes or even professes to pass an estate, even right, provided the warrant has at the time an estate to which the warranty can attach itself; it may have passed from the warrantor before, or even from a perfect stranger.
It may be now safely asked, Does the discontinuance arise from the warranty or bargain and sale, or both combined? It does not arise from either separately, and there is no estate in the bargainee after the bargainor's death, with which the warranty can combine or unite; in truth, it cannot be a discontinuance unless we entirely change the nature of the thing. I am not unapprised of what is said by Chief Baron Gilbert
in his Tenures, on this subject; but with deference to the learned judge, I think he is mistaken. Let his remarks pass for as much as his argument is worth. He says that the statute de donis, by prescribing the action for formedon, intended that the issue in tail should be put to his action, and if so, I have already admitted it as a discontinuance, for then there is a separation of the right from the estate. This is a strained construction, entirely unwarranted either by the letter or spirit of the act. It is true the formedon is prescribed; but that is where the issue has lost the estate, and seeks to recover it, not where he has not lost and may enter. It is a remedial act, intended to redress the wrongs which were committed on those conditional fees; and it would be strange, by a forced construction to deprive the holders of a right secured to them, or, if you choose, given, de dono, by the statute; this is of entering whenever they have the estate. It is further to be observed that when the statute was passed there was then no conveyance of an estate but those which operated by way of transmutation of possession, either such as carried the possession and estate with them or such as (335) recognized a previous possession and estate in the grantee.
I am, therefore, satisfied that a warranty attached to an estate, created by a bargain and sale, made by a tenant in tail, is not a discontinuance, nor in this country does it work one. It does not work one, for the inconvenience is the other way, for if she has right, and a discontinuance is worked against her, she cannot enter, she cannot bring an action of ejectment; for when she cannot enter she cannot bring ejectment. Let her bring her formedon, it is said, or some other real action. I should ask, Where, before what judge, what attorney shall she employ, what *Page 148 
clerk apply to for process? for there is not a man in North Carolina who ever brought such an action as lawyer, or tried one as judge, or issued process as clerk, or was present when one was tried, or knows anything about the manner of proceeding, and all these difficulties the defendant shall encounter, rather than put the plaintiff to his action, upon the warranty against the heirs or executors of, I will add, Michael Hill; and although in this particular case there would be great difficulty in reaching the assets of Michael Hill, from the great length of time — if he left any, and it does not appear that he did — yet the abstract question is now before us, and if it is a discontinuance in this case it is so in all. I mean not to express an opinion whether any of these old real actions can now be brought; it is sufficient in settling a question of convenience that these difficulties are to be encountered. In truth, it would be a mere mockery of justice to say to the defendant, You have a right, but for the convenience of a person who does not show as yet that he has any title, you must resort to some of those old remedies. We must conclude that either she has great demerits or that her adversary has great merits. The point made by her counsel upon the effect of her late recovery in ejectment against the now plaintiff, towit, that she is remitted thereby (336) to her former or, rather, better estate, were it necessary to express an opinion on it, I should say that she is not, for if a person who has lost the right of entry, by any means acquires a term for years in the land, there still remains a tenant of the freehold to answer to his action. The law is not reduced to the dilemma of saying either that he must abandon his right or sue himself; there still remains, notwithstanding the term of years, a freeholder against whom he may bring his action, which puts an end to the claim for a remitter.
On the second point, the statute of limitations, I think that the English authorities, as far as they go, even on the construction put on the statute of James, which is somewhat different from our statute, are in favor both of cumulative and successive disabilities. I know of no case in point, for the question did not arise either in Doe v. Jessup, 6 East, 80, or in Cotterell v. Dutton, 4 Taunton, 826. In both of those cases more than ten years had elapsed after the disabilities had ceased; but it must be admitted, from what was said by the Court in Doe v. Jessup, that the disability of the plaintiff would have been disregarded. Although the right had descended from an ancestor who had been under a continued disability, yet in Cotterell v. Dutton the whole Court expressed themselves in very decided language to the contrary, Chambre, J., saying that the ten years do not run during the disabilities, and Lens, Sergeant, who argued for the plaintiff, said that the case of Doe v. Jessup was decided contrary to the apprehension of the profession. In Stowell v. Zouch, Plowden, it was decided, after much argument, and not without *Page 149 
a diversity of opinion on the bench, that when the statute begins to run, it continues to do so, notwithstanding any supervenient disability. If supervenient disabilities are entirely disregarded, the statute would run over them, whether it had commenced running before they arose or not. The maxim would then be that the statute disregarded all supervenient disabilities — not when it begins to run it continues to run, regardless of such disabilities. The maxim as it stands presupposes a (337) time when there was no disability; it then commences, and, having commenced, it continues, for to prevent the operation of the enactment there must be a disability at the time the cause of action accrued. If there then was disability, the time allowed in the saving looked to the removal thereof; for disability, and not the lapse of time, was regarded in the saving. The lapse of time had been provided for in the enactment. To show that disability, and not time, was regarded in the saving, a person who was only one day old when the cause of action accrued has the same period after full age to assert his claims as one who was 20 years and 11 months old. Any one who will read Stowell v. Zouch (and that case has never been charged with favoring disabilities; it has, indeed, been many times struggled against on the other side) will perceive, I think, that the infant heir would not have been barred had not the statute commenced during the time of his ancestor, that is, at one period after the cause of action accrued, his ancestor was not under any disability; the time in the saving then began to run, and but for that the unanimous opinion of the Court would have been the other way; and from analogy to the common law on the subject of disabilities, I think the Court would have been well warranted in such opinion.
At common law, a feme sole of full age is disseized — and then taketh husband, and a descent is cast: neither she and her husband nor she after his death shall enter on the heir of the disseizor; for before her marriage she was under no disability, and might have entered. But if an infantfeme be disseized, and before full age take husband, and then descent is cast, she shall after discoverture enter upon the heir of the disseizor, and so may her heir if she die during her coverture. Coke Lit., 246. It is admitted that the analogy is not perfect, but it is sufficiently so to warrant the courts in saying that disability, and not time, is (338) regarded in the saving of the statute.
Stowell v. Zouch was decided on the saving in the saving in the statute of fines, and it was never formally applied, I believe, to the statute of James until the time of Lord Kenyon, 4 Term; and in the case of East it was charged by one of the Court that the words "or death" were inserted in the statute of James, which is not in the statute of fines, and were inserted in the statute of James to do away with all doubt; but even those expressions had no effect in Cotterell v. Dutton. They are not in our statute. The *Page 150 
statute of James also saves the right to the heirs; ours does not; it is given to them by construction, and very properly, for it surely could not be intended to make the right purely personal; and if it is right to modify it by construction in one particular, it is in another. It has been modified by construction in another part, and universally approved of: By the words of the statute, and infant has three years after arriving at full age to make his entry or claim. Should he die before he arrives at full age, is his right lost to his heir, or is the defendant never to be quieted in his possession? The case mentioned in the statute, arrives at full age, has never occurred; yet it was never doubted but that his heir, if under no disability, had the balance of three years yet to run to assert the claim, and, if under disability, I have endeavored to show three years after the disability was removed.
The first heir in tail after the death of the ancestor who aliened, Michael Hill, and who was the last person seized of the estate in tail, being when the right devolved on him an infant, and that heir dying before the disability was removed, leaving an infant heir, who became covert before full age, who having brought her action within three years after her discoverture, I am of opinion that she is not barred by the statute of limitations — that is, that she comes within the saving (339) of the act.
I shall not examine the question whether the deed of 1746 contains a pure warranty or only a covenant. This opinion is given on the supposition that it is a warranty; but on this point I express no opinion.
I have said, in the foregoing part of this opinion, that he who has the right of entry has the estate, and by a disseizin the disseizee does not lose the estate. I should have added, unless at his election, which he makes by bringing an action for it, for by demanding the estate of another, he allows that the other has it, and thereby admits that he has it not himself.
I have viewed this case as if there was a warranty in the deed; whether the covenant amounts to one or not, I have not deemed necessary to examine.
BY THE COURT. Let judgment be entered for the defendant.
Cited: Spruill v. Leary, 35 N.C. 418. *Page 151